UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| PATSY T. LOUVIER | : | DOCKET NO. 07-549 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE KAY |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of supplemental security income benefits. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## BACKGROUND

Plaintiff filed an application for supplemental security income payments on August 26, 2002. Transcript at 258. Initially her claim was denied and, on her request, a hearing before an administrative law judge (ALJ) was held on October 6, 2003. Doc. 10, at 1. This hearing resulted in an unfavorable decision for plaintiff. Transcript at 258. Plaintiff initiated an administrative appeal, and on September 10, 2004, the appeals council remanded the case for another hearing. *Id.* On July 26, 2005, a new hearing occurred before a different ALJ. *Id.* This hearing also resulted in an unfavorable determination for plaintiff. *Id.* at 258-70. Specifically, the ALJ determined that plaintiff was not disabled during the applicable time period within the meaning of the Social Security Act.[1] *Id.* at 258. In making this determination, the ALJ considered the

---

[1] According to 42 U.S.C. § 1382c(a)(3)(A), "an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable

medical evidence in the record, testimony from plaintiff, and testimony from a vocational expert. *Id.*

At the time of the hearing, Plaintiff was a 54 year-old individual with a high school education and some technical training in accounting, whose past work experience included employment as a food preparation clerk, an office manager, and several clerical positions (data entry clerk, permit clerk for a trucking company, and accounts clerk). *Id.* at 259. Plaintiff alleged to the ALJ that she became disabled on January 27, 2002 due to injuries to her right foot and left knee. *Id.* The ALJ noted that plaintiff also presented evidence of psychological involvement and that he would, therefore, also consider mental impairments. *Id.*

After setting out all the evidence, the ALJ determined that plaintiff "does not have a mental impairment that is severe and separate from her physical impairment and the pain it causes her" and that plaintiff's RFC limited her to "less than the full range of sedentary work." *Id.* at 267. The ALJ addressed the myriad evidence presented at trial:

> The undersigned is fully aware that Dr. Boutte and Dr. Gorin reported claimant with a mental impairment, but observes that no doctor has recommended claimant have care from a mental health care provider. Claimant has never (at least during the relevant period) had any treatment by a mental health care provider. Claimant does list Xanax as a current medication, describing it as prescribed for anxiety, but the undersigned cannot find that diagnosis in the file. Claimant's representative asserted the Xanax was prescribed for pain. The undersigned also notes that claimant has no effects from a mental impairment which are separate from the effects of her continuing pain. The undersigned may occasionally discuss claimant's response to her knee pain as if it were a mental impairment because, at times, doctors and the state evaluator mentioned that response as an impairment, though the undersigned does not. The undersigned treats claimant's psychological reaction to her knee injury as an effect of her continuing symptoms, not as a separate impairment.

---

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."

The medical evidence indicates that the claimant has continuing pain in the left knee, as a result of her knee injuries, together with her two arthroscopic knee surgeries, impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.[2] Claimant does not contend that her impairments meet or equal any listing, so the undersigned need not treat this step of the sequential evaluation process at length. Claimant's knee problems, which do not prevent her from walking effectively, cannot meet the requirements of listing 1.03 for major dysfunctions of a major joint. Claimant's quickly resolved ankle problem similarly does not meet this same listing. The undersigned considers that all the diagnoses stated by Dr. Gorin are included in the term knee pain, except for the lumbo-sacral involvement for which there is no support in the medical evidence—even from claimant's complaints, which never include her back.

. . .

Claimant's response to her knee pain is not a separate severe impairment even by the de minimis definition from *Stone v. Heckler*.[3] Claimant's pain response was evaluated as a mental impairment for the state agency by Robert Younger, Ph.D., using several listings—but assigning less than listing level severity to all the "B" criteria. Dr. Younger wrote that claimant's mental impairment, however considered or defined, caused her mild restriction in her activities of daily living, mild difficulties in maintaining social function, moderate difficulties in maintaining concentration, persistence or pace, and showed insufficient evidence of decompensation. The undersigned considers these effects as evidence that claimant's responses to her knee pain, even when considered as a mental impairment, do not make a severe impairment. The undersigned credits the expert evidence from Dr. Younger; and also decides that claimant has had no episodes of decompensation. The undersigned also decides there is no evidence which would support the existence of the "C" criteria.

. . .

---

[2] If a claimant has an impairment "which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), [the ALJ should find the claimant] disabled without considering your age, education, and work experience." 20 CFR 404.1520(d); *see also* 20 CFR 416.920(d).

[3] "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

3

The undersigned must determine whether claimant retains the residual functional capacity to perform the requirements of her past relevant work or other work existing in significant numbers in the national economy. The term "residual functional capacity" is defined in the Regulations as the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks (20 CFR § 416.945 and Social Security Ruling 96-8p).

In making this assessment, the undersigned must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR § 4l6.929, and Social Security Ruling 96-7p. The undersigned must also consider any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations (20 CFR § 416.927 and Social Security Rulings 96-2p and 96-6p).

. . .

[T]he undersigned finds the claimant retains the following residual functional capacity: less than the full range of sedentary work. Claimant can sit for 6 hours in the usual work day, with normal breaks, and can stand and walk for 2 hours in the usual work day, but requires the option to sit or stand at her choice. The inability to stand and walk for more than 2 hours in a work day establishes that claimant's residual functional capacity must be considered one for sedentary or less work. Claimant can lift and carry 10 lbs. both occasionally and frequently, a capacity for lifting and carrying which is slightly above the exertional requirements of sedentary work. Claimant can push and pull the same, but cannot work foot controls with her left leg. Claimant can occasionally climb stairs or ramps, but never ropes, ladders or scaffolds. Claimant can occasionally stoop, kneel or crouch, but can never crawl. The undersigned decides that claimant has no significant limitations on her mental residual functional capacity.

The undersigned has concluded that claimant has no mental limitations to her residual functional capacity. If claimant's pain caused her a pain disorder as a separate and severe impairment, the undersigned decides that claimant would have no limitations on her mental residual functional capacity greater than those assigned by Dr. Young: moderate limitations on being able to understand, remember and carry out detailed instructions, moderate limitations

> on the ability to maintain attention and concentration for extended periods and moderate limitations on the ability to respond appropriately to changes in the work place. Again, the undersigned decides that claimant does not have a severe mental impairment, and so has no medically determinable impairment reasonably likely to cause mental symptoms or mental limitations. Claimant does not have the clinical manifestations of any mental symptoms or limitations, as there are no notations in the medical evidence from any doctor who has treated claimant actually in the file of claimant having any manifestations of mental impairments at all, or none separate from her responses to pain.
>
> Claimant does not have behavioral manifestations of mental symptoms. Claimant does not have any treatment from mental health professionals shown [through] the medical evidence in file. Some training or treatment for dealing with the pain treatment was recommended for claimant, and claimant is noted to have had some such treatment. The actual records of that treatment are not in the file, though, and that treatment seems to have been training in pain control or for making use of pain treatment. Claimant describes taking Xanax, for anxiety, a diagnosis the undersigned cannot find in the medical evidence. Claimant's representative has contended that claimant takes Xanax for pain. The undersigned, therefore, does not consider that claimant has any mental impairment as a severe impairment separate from her responses to pain, and that claimant has no mental limitations on her residual functional capacity. The undersigned also concludes that if claimant had any such limitations, they would not be greater than those assigned by Dr. Younger.

*Id.* at 263-68.

The ALJ sought the expert assistance of a vocational expert in deciding if plaintiff could perform any of her past jobs with the residual functional capacity assigned and noted:

> Ms. Johnson testified that based upon the claimant's residual functional capacity, the claimant could return to her past relevant work as data entry clerk and accounts payable clerk as previously performed and as generally performed in the national economy. Ms. Johnson testified that she did so in accord with the information in the Dictionary of Occupational Titles.
>
> Ms. Johnson testified that both the data entry clerk and the accounts payable clerk jobs were performed at sedentary exertional levels in the national economy, which the residual functional

capacity assigned claimant would allow. While the undersigned credits this expert testimony, the undersigned also notes that claimant's description of her accounts payable work was that it called for infrequent lifting of greater than 10 lbs. The undersigned gives claimant the benefit of a doubt on this question, and concludes that her accounts payable job was actually performed at a greater exertional level than the general economy calls for. Equally crediting claimant's evidence, though, the undersigned concludes that claimant's office manager job would fit into claimant's residual functional capacity, where Ms. Johnson's testimony would show that job called for light exertional levels.

The undersigned, therefore, concludes that claimant could perform her past relevant work as an accounts receivable clerk, as generally performed in the national economy, and as an office manager, as she actually performed that job, and as a data entry clerk, both as she had performed that job and as that job is performed in the national economy.

If the undersigned considered that claimant's pain — or pain disorder — caused her any limitations on her mental residual functional capacity, such as those assigned by Dr. Younger, the effect would be to eliminate claimant's ability to perform skilled work. Of the three jobs just mentioned, two were described as skilled by Ms. Johnson: the office manager job and the permit clerk job. Claimant's former work as a data entry clerk was, according to Ms. Johnson, semi-skilled work. The undersigned does not consider that the limitations arising from claimant's pain as evaluated by Dr. Younger would eliminate semi-skilled work. The result of this proceeding would stay precisely the same: claimant would be found not disabled, as being able to return to one of her jobs which was past relevant work.

Claimant's representative asked Ms. Johnson to consider, with the same residual functional capacity and limitations as stated by the undersigned, the result if claimant was also required to ice her knee at times during the day for pain relief. The undersigned did not assign such a need as part of claimant's residual functional capacity. Ms. Johnson testified that claimant would still be able to perform the sedentary work required for the data entry clerk and accounts receivable clerk jobs.

Even giving claimant the benefit of doubts as to any limitations on her mental residual functional capacity, the undersigned would still decide that claimant could perform at her past relevant work as a data entry clerk.

> The undersigned finds the claimant was not under a disability as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 4l 6.920(f)).

*Id.* at 268-69.

Plaintiff filed a request for review of the hearing decision with the Appeals Council, but that request was denied on February 6, 2007. Doc. 10, at 1. Thus, on March 22, 2007, plaintiff filed suit with this court appealing the determination of the Commissioner.[4]

### STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)). The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Greenspan*, 38 F.3d at 236). "It is 'more than a mere scintilla and less than a preponderance.'" *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Id.* (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

---

[4] Further facts appear as necessary in the body of this report and recommendation.

"Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## DISCUSSION

### I.

The burden of proving that he or she suffers from a disability[5] rests with the claimant. *Perez*, 415 F.3d at 461. Particularly, the claimant must show that he or she is unable to engage in a work activity "involving significant physical or mental abilities for pay or profit." *Id.* (citing 20 C.F.R. § 404.1572(a)-(b)). The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520). If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Id.* "'Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding.'" *Id.* (quoting *Newton*, 209 F.3d 448, 453 (5th Cir. 2000).

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step. *Id.* (citing 20 C.F.R. § 404.1520(a)). On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step. *Id.* Before proceeding from step three to

---

[5] A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Id.* "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Id.* at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ found that plaintiff is not disabled at step four of the sequential analysis. Transcript at 267-68. Specifically, the ALJ found that plaintiff had a RFC of "less than the full range of sedentary work," and that plaintiff's past relevant work as a data entry clerk, office manager, or accounts clerk did not require the performance of work-related activities precluded by her RFC. *Id.* In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Perez*, 415 F.3d at 462 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).

Before this court, plaintiff challenges three aspects of the ALJ's determination that he was not disabled on the grounds that they are not supported by substantial evidence. First, plaintiff argues the vocational expert testimony relied on by the ALJ is based on a defective hypothetical. Doc. 10, at 4. Second, plaintiff argues that the work identified by the vocational expert requires a reasoning development level that surpasses plaintiff's mental RFC. *Id.* at 5. Third, plaintiff contends that the ALJ failed to make explicit and necessary findings as to the physical and mental demands of the plaintiff's past work. *Id.*

## II.
### A.

Plaintiff first argues that substantial evidence does not support the ALJ's determination because, according to plaintiff, the vocational expert testimony is based on a defective hypothetical.[6] *Id.* at 5. Specifically, plaintiff urges this court to find that the ALJ submitted to the vocational expert a hypothetical that failed to include plaintiff's alleged mental impairments. *Id.* According to plaintiff, "[t]he ALJ conceded that the plaintiff experienced (albeit from the psychological reaction to her knee injury) moderate limitations in her ability to understand, remember and carry out detailed instructions and moderate limitations in her ability to maintain attention and concentration for extended periods. Yet in making his hypothetical questions to the [vocational expert], the ALJ failed to include such limitations." *Id.* at 6. Plaintiff further contends that "[h]ad the ALJ included the limitations, the [vocational expert] may have recognized the conflict in the [Dictionary of Occupational Titles] reasoning development levels and testified that the plaintiff could not return to her past work or any other skilled or semi-skilled work." *Id.*

This court finds, however, that the ALJ posed a proper hypothetical question to the vocational expert. The ALJ's hypothetical asked the vocational expert to assume an individual with less than the full range of sedentary work. Transcript at 642. Limitations included standing for a maximum of two hours with the ability to sit at least once every fifteen minutes; lifting no more than ten pounds; occasionally stooping, crouching, or climbing ramps or stairs, but never kneeling, crawling, or climbing ropes, ladders, or scaffolding; and no foot pedal control requirements for the left leg. *Id.* In response, the vocational expert testified that plaintiff could

---

[6] Vocational expert testimony may be used to show that a claimant can perform her past relevant work. *Leggett*, 67 F.3d 558, 565 (5th Cir. 1995).

10

return to her past relevant work as a data entry clerk and accounts payable clerk.[7] *Id.* The ALJ then asked the vocational expert to also assume an individual who required a sit/stand option. *Id.* The Vocational Expert testified that plaintiff could still return to her prior work. *Id.*

Plaintiff's argument rests essentially on one erroneous assumption – that the ALJ's hypothetical should have included moderate difficulties in understanding, remembering and carrying out detailed instructions, as well as maintaining attention and concentration for extended periods. Doc. 10, at 6. This court finds that the ALJ weighed the evidence and did not find that these limitations existed for plaintiff. The record supports that the ALJ, while making some provision of what his determination might have been "if" he found that plaintiff had a mental impairment, found instead that plaintiff merely had a reaction to pain. Transcript at 267. He noted that, although two of plaintiff's many doctors reported her with a mental impairment, no doctor recommended treatment from a mental health care provider or prescribed medication for a mental health issue. *Id.* at 268. The ALJ considered the evidence of Dr. Younger, who found that plaintiff's mental limitations would be no greater than moderate, "and those only concerning claimant's abilities to understand, remember, and carry out detailed instructions, to maintain attention and concentration and to respond appropriately to change." *Id.* at 264. The ALJ credited Dr. Younger's finding that plaintiff's response to pain did not make a severe impairment. *Id.* The ALJ further determined that plaintiff had no episodes of decompensation or other evidence supporting the existence of "C" criteria, which takes into account whether there is marked interference with activities of daily living, social functioning, concentration, persistence, or pace, and whether the claimant has suffered repeated episodes of decompensation.[8] *Id.*; *see* 20

---

[7] As to the office manager job, the ALJ observed that, as plaintiff described her prior job, it called for light exertional duties and therefore, according to her RFC, could be performed by plaintiff.

[8] "[E]pisodes of decompensation" are defined as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living,

11

C.F.R. § 404, Subpt. P, App. 1, Part A, § 12.00(C). Importantly, after considering plaintiff's assertions as to her limitations, her medical records, and her medication, the ALJ determined:

> The undersigned considers that claimant's assertions of pain and its effects are essentially truthful and credible but not to the extent asserted. *The undersigned decides that claimants symptoms, since her alleged onset of disability and as they continue, are adequately allowed for in the residual functional capacity assigned . . . .*
>
> . . .
>
> *The undersigned has concluded that claimant has no mental limitations to her residual functional capacity.* If claimant's pain caused her a pain disorder as a separate and severe impairment, the undersigned decides that claimant would have no limitations on her mental residual functional capacity greater than those assigned by Dr. Young[er]: moderate limitations on being able to understand, remember and carry out detailed instructions, moderate limitations on the ability to maintain attention and concentration for extended periods and moderate limitations on the ability — to respond appropriately to changes in the work place. *Again, the undersigned decides that claimant does not have a severe mental impairment, and so has no medically determinable impairment reasonably likely to cause mental symptoms or mental limitations. Claimant does not have the clinical manifestations of any mental symptoms or limitations, as there are no notations in the medical evidence from any doctor who has treated claimant actually in the file of claimant having any manifestations of mental impairments at all, or none separate from her responses to pain.*
>
> Claimant does not have behavioral manifestations of mental symptoms. Claimant does not have any treatment from mental health professionals shown the medical evidence in file. Some training or treatment for dealing with the pain treatment was recommended for claimant, and claimant is noted to have had some such treatment. The actual records of that treatment are not in the file, though, and that treatment seems to have been training in pain control or for making use of pain treatment. Claimant describes taking Xanax, for anxiety, a diagnosis the undersigned cannot find in the medical evidence. Claimant's representative has contended that claimant takes Xanax for pain. *The undersigned, therefore, does not consider that claimant has any mental impairment as a severe impairment separate from her responses to*

---

maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. § 404, Subpt. P, App. 1, Part A , § 12.00(C)(4).

> *pain, and that claimant has no mental limitations on her residual functional capacity.*

Transcript at 267-68 (emphasis added).

This statement of findings made by the ALJ clarifies that the ALJ did not attribute any mental limitations in plaintiff's RFC or present them to the vocational expert because he found that none existed. Instead, the ALJ considered plaintiff's pain (including its alleged effects) and pursuant to this consideration, accorded her an RFC limited to less than the full range of sedentary work.

"The Commissioner, rather than the courts, must resolve conflicts of evidence." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). It is not for this court to reweigh the evidence or substitute its judgment for the Commissioner's. *Perez*, 415 F.3d at 461. When limitations recognized by the ALJ are reasonable under the evidence, and the ALJ makes a determination that is consistent with a vocational expert's testimony, the ALJ's decision is considered supported by substantial evidence. *See Morris v. Bowen*, 864 F.2d 333 (5th Cir. 1988). This court finds that the ALJ weighed the evidence and created an RFC for plaintiff that was consistent with that evidence. Accordingly, the ALJ presented the vocational expert with an accurate hypothetical as to plaintiff's impairments.[9]

---

[9] This court notes that even were it to find that the ALJ's hypothetical question was defective, this would not result in reversible error in this case because the ALJ's question incorporated all the disabilities that he recognized and plaintiff, represented by Counsel, had the opportunity to cross-examine the vocational expert on the hypothetical but did not. Transcript at 640-42. Where "the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)," a determination of non-disability based on such a defective question does not result in reversible error. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

**B.**

Plaintiff next argues that the ALJ determined that she was unfit to return to prior jobs as either an office manager or a permit clerk. According to plaintiff, her alleged mental impairment, described as moderate difficulties in maintaining concentration, persistence, or pace; moderate limitations in her ability to understand, remember, and carry out detailed instructions; and moderate limitations in her ability to maintain attention and concentration for extended periods of time, also precludes her from returning to work as a data-entry clerk. Doc. 10, at 7-9. She argues that:

> According to the [Dictionary of Occupational Titles], the job of a data entry clerk requires level-three reasoning development . . . . Level three reasoning development requires ["the] ability to apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form["] and ["]deal with problems involving several concrete variables in or from standardized situations." Level three reasoning development exceeds that of level two reasoning. Level two reasoning development requires the ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. According to GreatDr. Younger, and pursuant to the ALJ's findings, the plaintiff's mental limitations (from whatever source) are inconsistent with even level two reasoning development. Dr. Younger and the ALJ found that the plaintiff was moderately limited in her ability to understand or remember detailed instructions as well as to carry them out. Furthermore, she was moderately limited in her ability to maintain attention and concentration for extended periods . . . . If the plaintiff is unable to reliably understand, remember or carry out detailed instructions, as required by level two reasoning jobs, it cannot be said that she can perform level three reasoning jobs. The moderate limitations in understanding, remembering and carrying out nearly tracks the language of level two reasoning described by the DOT and is inconsistent with it.

*Id.* at 7-8. Plaintiff asserts that this creates a direct conflict between vocational testimony and the Dictionary of Occupational Titles, a conflict that the ALJ had a duty to identify and resolve. *Id.* at 8.

14

This court finds that the ALJ did not conclude that plaintiff was unfit to return to prior jobs as either an office manager or a permit clerk. Additionally, this court finds that the ALJ's determination that plaintiff could return to work as a data entry clerk is supported by substantial evidence. As discussed in the prior section, the ALJ did not find that plaintiff suffered from any mental impairment, and instead compensated for plaintiff's alleged pain by limiting her to less than sedentary activity.[10] Thus, plaintiff's argument that according to the Dictionary of Occupational Titles, the job of data entry clerk surpasses her mental RFC is without support.

## C.

Finally, plaintiff argues that an ALJ is bound by Social Security Ruling 82-62, when determining a claimant's capacity to do past relevant work, to show "clearly how specific

---

[10] Plaintiff puts too much emphasis on what is clearly dicta in the ALJ's decision. The ALJ noted that:

> "*If* the undersigned considered that claimant's pain — or pain disorder — caused her any limitations on her mental residual functional capacity, such as those assigned by Dr. Younger, the effect would be to eliminate claimant's ability to perform skilled work. Of the three jobs just mentioned, two were described as skilled by Ms. Johnson: the office manager job and the permit clerk job. Claimant's former work as a data entry clerk was, according to Ms. Johnson, semi- skilled work. The undersigned does not consider that the limitations arising from claimant's pain as evaluated by Dr. Younger would eliminate semi-skilled work. The result of this proceeding would stay precisely the same: claimant would be found not disabled, as being able to return to one of her jobs which was past relevant work.
>
> Claimant's representative asked Ms. Johnson to consider, with the same residual functional capacity and limitations as stated by the undersigned, the result if claimant was also required to ice her knee at time during the day for pain relief. The undersigned did not assign such a need as part of claimant's residual functional capacity. Ms. Johnson testified that claimant would still be able to perform the sedentary work required for the data entry clerk and accounts receivable clerk jobs.
>
> Even giving claimant the benefit of doubts as to any limitations on her mental residual functional capacity, the undersigned would still decide that claimant could perform her past relevant work as a data entry clerk.

Transcript at 268-69 (emphasis added).

Given that the ALJ conclusively determined that plaintiff *did not* have any mental limitations, this court finds it difficult to construe the ALJ's notation above as anything more than "what ifs."

evidence leads to a conclusion." Doc. 10, at 9-10. According to plaintiff, an ALJ's decision pursuant to Social Security Ruling 82-62, must contain: "1. A finding of fact as to the individual's RFC; 2. A finding of fact as to the physical and mental demands of the past job/occupation; [and] 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation." *Id.* at 9 (quoting Social Security Ruling 82-62). Plaintiff argues that, based on her alleged mental impairments, she could not work as a data entry clerk, which requires level three reasoning abilities. According to plaintiff, because the ALJ found that she could perform that work, the ALJ failed to conduct the proper analysis.

This court finds that the ALJ performed the analysis required by Social Security Ruling 82-62. First, as previously discussed, the ALJ found that plaintiff has an RFC limiting her to less than the full range of sedentary work due to her pain with "no mental limitations." Transcript at 267. Second, the ALJ requested and considered information submitted by plaintiff about the demands of her prior jobs. *Id.* at 268, 349-56. The ALJ also asked the vocational expert to describe the demands of plaintiff's prior work. *Id.* at 268-69, 640-42. Finally, the ALJ posed a technically correct hypothetical to the vocational expert as to whether plaintiff's RFC would preclude her from returning to her prior work. Where these steps have been taken, the appeal court has found the ALJ's decision well supported. *See Leggett*, 67 F.3d 558, 564-65 (5th Cir. 1995).

### III.

For the foregoing reasons,

IT IS RECOMMENDED that the Commissioner's determination be AFFIRMED and that plaintiff's Complaint be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 30th day of September, 2008.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE